Michael D. Rogers (MR-8815)
Suzan Arden (SA-4715)
WASSERMAN GRUBIN & ROGERS LLP
1700 Broadway
New York, New York 10019
(212) 581-3320
*Attorneys for Plaintiff Perkins Eastman*

07 CV 11082



## UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

PERKINS EASTMAN ARCHITECTS, PC,

                            Plaintiff,

             -against-

SECURITY INSURANCE COMPANY OF HARTFORD,

                        Defendant.

------------------------------------------------------------------ x

__ Civ. ____ (___)

**COMPLAINT**
**Jury Trial Demanded**

    Plaintiff Perkins Eastman Architects, PC, by and through its attorneys Wasserman Grubin & Rogers, LLP, as and for its complaint against Security Insurance Company of Hartford respectfully alleges as follows:

## NATURE OF THE CASE

    1.    Plaintiff Perkins Eastman Architects, PC (hereinafter referred to as "Perkins Eastman") seeks judgment declaring that defendant Security Insurance Company of Hartford (hereinafter referred to as "Security Insurance"), pursuant to the terms of the professional liability insurance policy it sold to Perkins Eastman, is obligated to provide a defense and indemnify Perkins Eastman against claims asserted in an action commenced by the Dormitory Authority of the State of New York ("DASNY"). Perkins Eastman also seeks to recover the damages it has suffered as a result of Security

1

Insurance's breach of contract and breach of duty of good faith and fair dealing owed to Perkins Eastman.

## THE PARTIES

2.    Perkins Eastman is a Professional Corporation, duly organized and operated under and by virtue of the laws of the State of New York, with its principal place of business located at 115 Fifth Avenue, New York, New York.

3.    On information and belief, Security Insurance is a foreign corporation, duly organized and operated under and by virtue of the laws of the State of Connecticut with its principal place of business located at 9 Farm Springs Drive, Farmington, Connecticut.

## JURISDICTION AND VENUE

4.    Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different states.  Jurisdiction is also proper under the Declaratory Judgment Act, 28 U.S.C. § 2201.

5.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim arose in this District and because Plaintiff Perkins Eastman's principal place of business is in this District.

## FACTUAL BACKGROUND

### The Insurance Policy

6.    On or about December 14, 1999, Perkins Eastman purchased a Professional Liability Policy for Design Professionals, Policy No. PL703038, from Security Insurance for the policy period beginning December 14, 1999 and through

endorsement extending to January 16, 2003 (the "Policy"). A copy of the Policy is annexed hereto as Exhibit A.

7.    Pursuant to this Policy, Security Insurance agreed to:

> ". . . pay those sums in excess of the Deductible that you become legally obligated to pay for CLAIMS related to your PROFESSIONAL SERVICES to which this policy applies."

*See*: Exhibit A. I. "INSURING AGREEMENTS" at Section A.

8.    A "claim" is defined in the Policy as both:

1.  a demand for money or services against you, or the filing of a suit or the institution of an arbitration proceeding naming you, seeking damages for an alleged error, omission, negligent act or 'personal injury' related to your PROFESSIONAL SERVICES; or

2.  an event of which you have knowledge that may result in a demand against you seeking damages related to your PROFESSIONAL SERVICES.

*See*: Exhibit A. III. "DEFINITIONS OF TERMS IN BOLD PRINT" at Section A.

9.    The Policy also contains a provision extending the reporting period for claims for an additional sixty (60) days beyond the expiration date of the policy. Specifically, the Policy states that the "automatic extended reporting coverage is for sixty (60) days after the termination of coverage" pursuant to New York Insurance Regulation 121. *See*: Exhibit A, Endorsement 15, Endorsement No. 37592.

10.    The Policy limits are $15 million per claim, with a $15 million aggregate. *See* Exhibit A. Declarations.

11.    The insurance brokers for the transaction were Singer Nelson Chalmers (hereinafter "SNC").

3

## The Project

12.    On or about July 2001, DASNY entered into an agreement with Perkins Eastman to serve as the architects for the design and construction of a state of the art forensic biology laboratory for the Medical Examiner for the City of New York (the "Project"). The laboratory was to be constructed adjacent to Bellevue Hospital's C and D Building located at First Avenue and 26th Street. Perkins Eastman was to provide, among other tasks, a site plan, make design recommendations and to prepare contract drawings and specifications for the laboratory.

13.    On information and belief, DASNY entered into an agreement with Samson Construction Co. ("Samson") on or around January 11, 2002, under the terms of which Samson would, among other tasks, provide excavation services to the Project which included the installation of a retaining wall.

## The Claim and Notice

14.    On or around January 13, 2003, Perkins Eastman notified Security Insurance of a potential claim or claims under the Policy. The basis of the claim involved the settlement of an existing building which was adjacent to the Project. The settlement of the building was alleged to have resulted from excavation activities conducted by Samson. Specifically, it is purported that while Samson was driving and vibrating sheet piles into the ground, it encountered an obstruction that diverted the energy of the vibratory hammer into the subsoil supporting the adjacent property.

15.    On or around January 17, 2003, SNC forwarded a written description of the prospective claim to Security Insurance on behalf of Perkins Eastman, stating as follows:

4

While installing the steel sheet piling, which is part of the foundation system, the excavation contractor encountered unforeseen underground obstructions in May of 2002. These obstructions diverted the energy of the vibratory hammer into the subsoil. The adjacent building (known as the C&D Building) has a portion of foundation system founded on piles which were bearing into the same subsoil (sand-bearing stratum). The vibration of the sub soil caused the densification of the sand stratum, presumably affecting the downward movement of the piles. The settlement of the piles caused the settlement to a number of interior columns. . . . . The client actually owns the adjacent building where the settling occurred. Also, this client does not have a litigious reputation. The project has been bid and bids are coming in under budget, therefore the cost of remediation along with the bids to date are in the aggregate substantially less than the project budget. **Never the less, we felt that it was wise to report it as a possible claim.** (Emphasis added).

### The DASNY Action

16.    On information and belief, on or around February 1, 2007, DASNY filed an amended summons in a lawsuit it had pending against Samson in New York State Court, New York County, Index No. 403436/06 (the "DASNY Action"), by which DASNY brought claims against Perkins Eastman concerning the Project.    A copy of the Complaint against Perkins Eastman is annexed hereto as Exhibit B.

17.    The first four claims in the DASNY Action were against Samson.    The Fifth Cause of Action purports to be against Perkins Eastman, and contends that Perkins Eastman, among other things, "fail[ed] to monitor the progress of the Work to ensure that it was being completed properly and in substantial compliance with the design recommendations, specifications and their intent, by failing to ascertain the actual field conditions, including the subsurface conditions at the Site and the foundations beneath D Building and by failing to advise DASNY of the risks to the D Building posed by the installation of the Steel Sheeting System and taking precautions against such risks." *See:* Exhibit B, ¶ 45.

18.    The Sixth Cause of Action in the DASNY Action is also against Perkins Eastman, and contends that the same conduct as alleged in the Fifth Cause of Action, quoted *supra*, constitutes negligence.

19.    The Fifth and Sixth Causes of Action seek damages of $12 million and $16 million against Perkins Eastman respectively.

20.    Perkins Eastman received a copy of the Supplemental Summons and Verified Complaint on or around February 22, 2007.  On that same date of February 22, 2007, Perkins Eastman duly forwarded a copy of the Supplemental Summons and Verified Complaint to SNC for transmittal to Security Insurance.

21.    On information and belief, on or around February 23, 2007, SNC duly notified Security Insurance and duly forwarded a copy of the Supplemental Summons and Verified Complaint in the DASNY Action.

### Security Insurance's Denial of Coverage

22.    After receipt of notice in the DASNY Action, Security Insurance initially provided a defense to Perkins Eastman

23.    On or around October 2, 2007, however, Security Insurance, through Arrowpoint Capital,[1] wrongfully denied coverage in the DASNY Action and refused to comply with its obligation to defend and indemnify Perkins Eastman pursuant to the Policy.

24.    Upon information and belief, Security Insurance's wrongful denial of coverage is premised upon a purported failure by Perkins Eastman to provide timely notice to Security Insurance of the DASNY Action.

---

[1] Upon information and belief, Arrowpoint Capital is the holding company which presently owns defendant Security Insurance Company of Hartford.

25.    Security Insurance's contention of untimely notice is belied by the undisputable fact that Perkins Eastman provided notice to Security Insurance during the Policy Period and forwarded the Amended Summons and Complaint to Security Insurance on the same date as it was served upon Perkins Eastman.

## FIRST CAUSE OF ACTION

26.    Perkins Eastman repeats and realleges each and every allegation set forth in Paragraphs Nos. "1" through "25" of the Complaint as if set forth in full herein.

27.    There exists a real and actual controversy between the parties herein concerning whether Security Insurance has the duty to defend and indemnify Perkins Eastman in the DASNY Action.

28.    Pursuant to the Policy, Perkins Eastman is entitled to the coverage provided therein and Security Insurance is obligated to defend and indemnify Perkins Eastman against the claims in both Actions. As set forth above, Security Insurance has denied coverage in the DASNY Action and refused to provide a defense or indemnification. On information and belief, Security Insurance will continue to deny such coverage. This claim is therefore ripe for determination.

29.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Perkins Eastman respectfully seeks a declaratory judgment; (1) for the purpose of determining and adjudicating questions of actual controversy between the parties, and (2) declaring that pursuant to the terms of the Policy that Security Insurance is obligated to defend and indemnify Perkins Eastman in the DASNY Action.

## SECOND CAUSE OF ACTION

30.     Perkins Eastman repeats and realleges each and every allegation set forth in Paragraphs Nos. "1" through "29" of the Complaint as if set forth in full herein.

31.     Perkins Eastman entered into an agreement with Security Insurance where it purchased the Policy from Security Insurance so as to be defended and indemnified against any claims asserted during the Policy period.

32.     Perkins Eastman has fully complied with all of the obligations required thereunder, including but not limited to, the timely furnishing of all notices and the remitting of full payment of all premiums that were due under the terms of the Policy.

33.     Pursuant to the terms of the Policy, Security Insurance is obligated to defend and indemnify Perkins Eastman against the claims asserted in the DASNY Action.

34.     Security Insurance has breached its agreement with Perkins Eastman by failing and refusing to defend and indemnify Perkins Eastman as required under the Policy.

35.     As a result of Security Insurance's breach of the agreement, Perkins Eastman has and will continue to suffer damages in an amount to be determined at trial, but which are believed to be in excess of $3,000,000.

## THIRD CAUSE OF ACTION

36.     Perkins Eastman repeats and realleges each and every allegation set forth in Paragraphs Nos. "1" through "35" of the Complaint as if set forth in full herein.

37.    Inherent in every insurance policy there is a duty of good faith and fair dealing which binds Security Insurance to the utmost good faith in its relationships with its policyholders, including Perkins Eastman.

38.    By its actions as set forth above, Security Insurance has breached the duty of good faith and fair dealing owing to Perkins Eastman.

39.    As a result of Security Insurance's breach of the duty of good faith and fair dealings, Perkins Eastman has and will continue to suffer damages in an amount to be determined at trial, but which are believed to be in excess of $3,000,000.

40.    In addition thereto, Perkins Eastman is entitled to an award of punitive damages in an amount to be determined at trial, but which are believed to be in excess of $3,000,000.

WHEREFORE, Perkins Eastman Architects, PC seeks judgment against Security Insurance Company of Hartford as follows:

On its First Cause of Action, judgment declaring that pursuant to the terms of the Policy, plaintiff is obligated to defend and indemnify Perkins Eastman in the DASNY Action; and

On its Second Cause of Action, damages in an amount to be determined at trial, but believed to be in excess of $3,000,000; and

On its Third Cause of Action, damages in an amount to be determined at trial, but believed to be in excess of $3,000,000, together with an award of punitive damages; and

9

Such other and further relief as this Court may deem just and proper as well as the costs and disbursements of this action and attorneys' fees. A jury trial is demanded.

Dated: New York, New York
       December 7, 2007

WASSERMAN GRUBIN & ROGERS, LLP

By: _____

Michael T. Rogers (MR-8813)
Suzan Arden (SA-4715)
*Attorneys for Plaintiff Perkins Eastman Architects, PC*
1700 Broadway
New York, New York 10019
(212) 581-3320

# EXHIBIT A

COPY

PL703038

DEX703038

DPIC Companies, Inc.
**Security Insurance Company of Hartford**

9 Farm Springs Drive ● Farmington, CT 06032
A Member of the Orion Capital Companies

**POLICY NUMBER**

**Declarations**

PROFESSIONAL LIABILITY
POLICY FOR DESIGN
PROFESSIONALS

*Complete copy of policy*

Item 1 — **NAMED INSURED:** Perkins Eastman Architects, P.C.

Item 2 — **MAILING ADDRESS:** 115 Fifth Avenue
New York, New York 10003

Item 3 — **Phone #** (212) 889-1720 **FAX #** (212) 213-6125 **Electronic Mail #** PEAPC@aol.com

Item 4 — **POLICY PERIOD:** Effective Date 12/14/1999 Expiration Date 12/14/2002
(12:01 a.m. Local Time at the Above Mailing Address)

Item 5 — **LIMITS OF INSURANCE:**

| | EACH CLAIM | AGGREGATE | PREMIUM |
|---|---|---|---|
| Professional Liability | 15,000,000 / 2,000,000 | 15,000,000 / 2,000,000 | $ 283,797 |
| Optional Endorsements | | | |
| Shared Cost of Defense | # n/a | | $ -0- |
| Dollar One Defense | # 7 | $ 7,507 | $ 22,521 |
| Education Program Credits | # n/a | | $ -0- |
| Limitation of Liability | # n/a | | $ -0- |
| Special Coverage | # 2 | 6,693 | $ 16,386 |
| Other | # 8 | | $ 2,500 |

Item 6 — **TOTAL PREMIUM:** $ 325,204
Assessments/Taxes n/a $

Item 7 — **DEDUCTIBLE:** $ 50,000 EACH CLAIM/$ n/a AGGREGATE

Item 8 — **NOTICE OF CLAIMS MADE POLICY:**
Professional Liability coverage is on a CLAIMS MADE. Coverage applies only to those CLAIMS that are first reported to the Company during the policy period.

Item 9 — **NOTICE OF EXPENSE WITHIN THE LIMITS:**
Professional Liability Coverage contains a provision that (a) reduces the Limits of Insurance stated in the policy by the costs of CLAIMS EXPENSES and/or (b) may permit CLAIMS EXPENSES to be applied against the deductible or retention amount if any.

Item 10 — **RETROACTIVE DATE:** 01/01/1979

Item 11 —

The policy consists of this Declaration Page, Insuring Agreement and Endorsements listed as follows:
DP37009-0 (03/96); DP37120-0 (01/96); DP37202-0 (01/96); DP37210-0 (02/97); DP37211-0 (02/97);
DP37212-0 (02/97); DP37231-0 (01/96); DP37254-0 (01/96); DP37301-0 (01/96); DP37406-0 (05/98);
DP37409-0 (01/96); DP37576-0 (04/98); DP37587-0 (03/96); DP37588-0 (03/96); DP37591-0 (03/96);
DP37592-0 (03/96);

**PLEASE READ THE POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH THE INSURANCE AGENT OR BROKER DESIGNATED BELOW.**

Agent: Singer Nelson Charlmers Date Issued: 02/16/2000 MTP

Countersigned by: David Singer

Countersigned at: Teaneck, New Jersey

JAN 3 2 2003

Endorsement   37416

m ß

# Security Insurance Company of Hartford

EXTENSION
ENDORSEMENT

Effective:    01/14/2003          Policy:    PL7030381/DEX7030381

issued to:    Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

It is agreed that the Declarations, Item 4 - Expiration Date, is amended to read as follows:
01/16/2003

Additional Premium Due:

$  948

PL                      DOD
$  910                  $  38

Return Premium Due:          $    0

TC                      LofL
$  0                    $  0

Total Additional Premium Due:          948
$

Pro rata Factor:    .005

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers

Authorized Agent   KM 01/17/2003                    Endorsement   23

Form No. DP-37416-0 (01/96)                    © Copyright DPIC Companies, Inc. 1995

PROGRAM CREDITS

Effective  12/14/2000 _____    Policy No.  PL703038/DEX703038 _____

Issued to  Perkins Eastman Architects, P.C. _____

by the Company shown above is changed as follows:

To acknowledge your having successfully completed our Professional Liability Education Program,        Risk Drivers Seminar        , we are pleased to give you a return premium of $   10,676        (   10    %).

To acknowledge your achievement under our Limitation of Liability Program, we are pleased to give you a return premium of $       n/a         (      n/a     %).

Congratulations on your achievement!

Reminder:  You are eligible for a Peer Review Credit every five (5) years in addition to the annual Professional Liability Education Program Credit.  We encourage your ongoing participation in our premium credit programs.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers _____
Authorized Agent        MTP 12/18/2001                    Endorsement 20

Form No. DP-37402-0 (01/96)              © Copyright DPIC Companies, Inc. 1995

Case 3:04-cv-01087-AB Document 1    Filed 12/07/2004    Page 15 of 30    SEP 2 0 2001

INCREASE OF PROFESSIONAL
LIABILITY LIMIT

Effective  07/19/2001                                    Policy No.  PL703038/DEX703038

Issued to Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

This endorsement amends DECLARATIONS, Item 5 - LIMITS OF INSURANCE, as follows:

|  | Each CLAIM | Aggregate |
|---|---|---|
| Professional Liability | $   15,000,000 ✓ | $   15,000,000 ✓ |

This endorsement shall not apply to:

1.   CLAIMS arising from events reported to the Company prior to the effective date of this endorsement, or

2.   any professional act, error or omissions which might reasonably be expected to give rise to a CLAIM under this insurance if the Insured had knowledge of such act prior to the effective date of this endorsement.

|  | 2nd Year 2000-2001 | 3rd Year 2001-2002 |
|---|---|---|
| **PROFESSIONAL LIABILITY** |  |  |
| Amended Annual Premium: | $181,955 ✓ | $181,955 ✓ |
| Annual Additional Premium: | 87,356 ✓ | 87,356 ✓ |
| **ENDORSEMENT CREDITS** |  |  |
| Annual Return Premium: | n/a | n/a |
| **PRORATA FACTOR** | .405 ✓ | 1.0 ✓ |
| TOTAL ADDITIONAL PREMIUM: | $35,379 ✓ | $87,356 ✓ |

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent        MTP 09/13/2001                    Endorsement 19

Form No. DP-37415-0 (01/96)                    © Copyright DPIC Companies, Inc. 1995

# DELETION OF ENDORSEMENT

**Effective** 07/19/2001        **Policy No.** PL703038/DEX703038

**Issued to** Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

    It is agreed that Policy Endorsement Number   2   is deleted.

    Additional Premium :   n/a

    Return Premium   :   n/a

*deletes STX
"Embassy Suites"
endt.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers

Authorized Agent      MTP 09/13/2001            Endorsement 18

Form No. DP-37401-0 (01/96)            © Copyright DPIC Companies, Inc. 1995

Security Insurance Company of Hartford

NAMED INSURED

Effective  04/01/2001                                                      Policy No.  PL703038/DEX703038

Issued to Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

It is agreed the DECLARATIONS, Item 1., Named Insured, is amended  to read as follows:

✓ Perkins Eastman Architects, P.C.

✓ Bradford Perkins & Associates, Architects, P.C.

✓ Bradford Perkins & Associates

✓ Perkins, Geddis, Eastman, Architects

✓ Bradford Perkins & Associates, P.C.

✓ L. Bradford Perkins Architects, P.C.

✓ Perkins Eastman Partnership

✓ Perkins Eastman & Partners/Ben Thompson Associates

✓ PGE Mills Associates, Architects

✓ Perkins Eastman Mills Architects

✓ Perkins Eastman & Partners

✓ Davis Brody & Associates / Perkins Geddis Eastman

✓ Perkins Eastman Architects PC / Bhavnani & King Architects

✓ Buckhurst Fish & Jacquemart

✓ Medarc but only for professional services performed by Perkins Eastman  Architects, P.C. after 04/01/2001.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent       MTP 08/30/2001                          Endorsement  17

Form No. DP-37301-0 (01/96)                    © Copyright DPIC Companies, Inc. 1995

Security Insurance Comp   7 of Hartford                Endorsement  37402

## PROGRAM CREDITS

Effective  12/14/1999                                   Policy No.  PL703038/DEX703038

Issued to Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

To acknowledge your having successfully completed our Professional Liability Education Program,_____In-Firm Seminar_____, we are pleased to give you a return premium of $   9,460        (   10   %).

To acknowledge your achievement under our Limitation of Liability Program, we are pleased to give you a return premium of $_____n/a_____  (   n/a   %).

### Congratulations on your achievement!

Reminder:  You are eligible for a Peer Review Credit every five (5) years in addition to the annual Professional Liability Education Program Credit.  We encourage your ongoing participation in our premium credit programs.

## ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent        CXR  11/28/2000

Endorsement 16

Form No. DP-37402-0 (01/96)                    © Copyright DPIC Companies, Inc. 1995

**Security Insurance Company of Hartford**

Endorsement _37592_____
REGULATION 121 NOTICE

Effective _12/14/1999_____     Policy No. _PL703038/DEX703038_____

Issued to _Perkins Eastman Architects, P.C._____

by the Company shown above is changed as follows:

## NOTICE TO POLICYHOLDERS

New York Regulation 121 provides disclosure and notice requirements for CLAIMS MADE policies issued or renewed in New York.

### NOTICE

This policy is written on a CLAIMS MADE basis.

This policy provides no coverage for CLAIMS arising out of incidents, occurrences, or alleged wrongful acts which took place prior to the retroactive date stated in the policy and shown on the Declarations page.

This policy covers only CLAIMS actually made against you while the policy remains in effect. This includes incidents reported, since we recognize incident as a trigger of coverage under this policy. All coverage under the policy ceases upon the TERMINATION OF COVERAGE, except for the automatic extended reporting period coverage as described in the policy or unless you purchase additional extended reporting coverage as described in the policy. Extended reporting coverage provides that CLAIMS made against you and reported to us during the extended reporting period will be covered ONLY IF the error, omission or negligent act giving rise to the CLAIM took place prior to normal expiration or cancellation date of the policy.

The automatic extended reporting coverage is for sixty (60) days after the termination of coverage. The optional additional extended reporting coverage would be a minimum period of thirty-six (36) months after TERMINATION OF COVERAGE. Inasmuch as the additional extended reporting option is not for an unlimited time period, please be advised of the possibility of coverage gaps that might arise upon expiration of the extended reporting period coverage. These coverage gaps might occur if you did not buy coverage with prior acts to replace this policy, or if the replacement policy is not as broad as this policy, or if you bought no insurance whatsoever. At the end of the extended reporting period, this policy will not be responsible for any new CLAIM reported to us.

Please read your policy. Particular attention should be paid to the Notice in the Declarations. Also, Notice 37587, required by Regulation 107, applies to this policy.

Should you have any questions, your agent has a complete copy of Regulation 121 and can assist you.

## ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers_____
**Authorized Agent       MTP 02/16/2000**

Endorsement 15

Form No. DP-37592-0 (03/96) NY                    © Copyright DPIC Companies, Inc. 1995

EXTENDED REPORTING
PERIOD - NEW YORK

Effective  12/14/1999 _____      Policy No.  PL703038/DEX703038 _____

Issued to Perkins Eastman Architects, P.C _____

by the Company shown above is changed as follows:

A.  If this coverage is canceled or is not renewed, or if renewal terms provide coverage less favorable to you than this policy, then I. INSURING AGREEMENTS, E. When and Where We Insure, paragraph 1. is deleted and the following substituted:

  1.  The CLAIMS are first made during the policy period and automatically within sixty (60) days after the "termination of coverage" if:

    a.  The error, omission or negligent act giving rise to the CLAIM took place during the policy period; or

    b.  The error, omission or negligent act giving rise to the CLAIM took place prior to the policy period but after the retroactive date specified in the declarations, if applicable, but only if:

      (1)  you had no knowledge of the CLAIM prior to the beginning of this policy; and

      (2)  you had no knowledge of any situation that resulted in the CLAIM; and

      (3)  there is no other valid insurance for the CLAIM.

B.  Furthermore, in the event of such cancellation or non-renewal,  I. INSURING AGREEMENTS, E. When and Where We Insure, paragraph 1, may, at your option, be amended from sixty (60) days to thirty-six (36) months.  If you so elect, paragraph A above applies but is modified to thirty-six (36) months.

  In addition to A. or B. above,

C.  You must have notified us in writing, within sixty  (60) days after termination date or within thirty (30) days of our notification to you of your rights under this endorsement (whichever is greater), of your decision to invoke the thirty-six (36) month period; and

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers _____
Authorized Agent      MTP  02/16/2000

Endorsement 14

Page 1  of 3

Form No. DP-37591-0 (03/96) - NY
© Copyright DPIC Companies, Inc. 1995

Endorsement 37591

**EXTENDED REPORTING**
**PERIOD - NEW YORK**

Effective 12/14/1999 _____ Policy No. PL703038/DEX703038 _____

Issued to Perkins Eastman Architects, P.C. _____

by the Company shown above is changed as follows:

A.    If this coverage is canceled or is not renewed, or if renewal terms provide coverage less favorable to you than this policy, then I. INSURING AGREEMENTS, E. When and Where We Insure, paragraph 1. is deleted and the following substituted:

    1.   The CLAIMS are first made during the policy period and automatically within sixty (60) days after the "termination of coverage" if:

        a.   The error, omission or negligent act giving rise to the CLAIM took place during the policy period; or

        b.   The error, omission or negligent act giving rise to the CLAIM took place prior to the policy period but after the retroactive date specified in the declarations, if applicable, but only if:

           (1)   you had no knowledge of the CLAIM prior to the beginning of this policy; and

           (2)   you had no knowledge of any situation that resulted in the CLAIM; and

           (3)   there is no other valid insurance for the CLAIM.

B.    Furthermore, in the event of such cancellation or non-renewal, I. INSURING AGREEMENTS, E. When and Where We Insure, paragraph 1, may, at your option, be amended from sixty (60) days to thirty-six (36) months. If you so elect, paragraph A above applies but is modified to thirty-six (36) months.

   In addition to A. or B. above;

C.    You must have notified us in writing, within sixty (60) days after termination date or within thirty (30) days of our notification to you of your rights under this endorsement (whichever is greater), of your decision to invoke the thirty-six (36) month period; and

**ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Countersignature:

Singer Nelson Charlmers _____
**Authorized Agent**     MTP 02/16/2000

Endorsement 14

Page 1 of 3

Form No. DP-37591-0 (03/96) - NY       © Copyright DPIC Companies, Inc. 1995

**Security Insurance Company of Hartford**

Endorsement  37591

EXTENDED REPORTING
PERIOD - NEW YORK

Effective  12/14/1999                              Policy No.  PL703038/DEX703038

Issued to  Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

You must pay the additional premium to be charged at that time.

D.     Furthermore, we will provide thirty-six (36) months extended reporting period coverage upon termination of coverage to any person covered by this policy if:

1.     You have been placed in liquidation or bankruptcy or you permanently cease operation;

2.     You or your designated trustee does not purchase the extended reporting period coverage;

3.     The person covered under the policy requests the extended reporting period coverage within one hundred twenty (120) days of the termination of coverage;

4.     There is no other valid insurance for the CLAIM; and

5.     The person for whom extended reporting period coverage is provided pays a premium for such coverage.

E.     The Limit of Insurance applicable to CLAIMS reported under B. or D. above shall be at least equal to the policy's last annual aggregate Limit of Insurance but shall in no event exceed $15,000,000 2,000,000 .

F.     As used above, TERMINATION OF COVERAGE means, whether by you or by us at any time:

1.     Cancellation or non-renewal of the policy; or

2.     Decrease in limits, reduction of coverage, increase in deductibles or self-insured retention, new exclusions, or any other change in coverage less favorable to you.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent        MTP 02/16/2000

Endorsement 14

Page 2 of 3

Form No. DP-37591-0 (03/96) - NY            © Copyright DPIC Companies, Inc. 1995

**Security Insurance Company of Hartford**

Endorsement  37591
EXTENDED REPORTING
PERIOD - NEW YORK

Effective  12/14/1999                              Policy No.  PL703038/DEX703038

Issued to Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

G.   We agree to notify you in writing within thirty (30) days after **TERMINATION OF COVERAGE** of
     the automatic extended reporting period coverage and the availability of the premium for and the
     importance of purchasing additional extended reporting period coverage.

H.   A statement of potential coverage gaps, endorsement 37593, is also included in this policy.

I.   The Declarations are amended to add the following premium condition:

The premium for the entire thirty-eight (38) months extended reporting will be 300% of the premium
for the twelve (12) months of insurance immediately preceding termination of coverage.  In the event
of termination of coverage by you on a date other than the policy's expiration date, the cost of the
extended reporting coverage will be adjusted appropriately.  The premium for coverage provided in
D. above will be determined by the Company after the request is received but will not exceed 300%
of the twelve (12) month premium.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent        MTP 02/16/2000                    Endorsement 14

Form No. DP-37591-0 (03/96) - NY            © Copyright DPIC Companies, Inc. 1995

**EXPENSE INSIDE LIMITS - NY**

Effective  12/14/1999                                                    Policy No.  PL703038/DEX703038

Issued to  Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

I.     The Insured understands that the policy provides that the Limits of Insurance applicable to this policy shall be reduced, and may be exhausted, by the costs of legal defense and other supplementary payments incident to a **CLAIM** of legal liability covered under Professional Liability.  In that event, the Company shall not be liable for the costs of legal defense, other supplementary payments, or for the amount of any judgment or settlement to the extent that such exceeds the Limits of Insurance.

II.    The Insured further understands that legal expenses incurred as a result of **CLAIMS** made may be applied against the deductible up to the deductible amount stated in the Declarations.  If such legal expenses exhaust the deductible, any additional legal expenses excess of the deductible will be applied as per paragraph 1.  An Endorsement to delete or partially delete this provision was offered.

ACCEPTED BY:     FIRM     _____

                 NAME     _____

                 TITLE    _____

                 DATE     _____

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent          MTP 02/16/2000                          Endorsement 13

Form No. DP-37588-0 (03/96) NY                     © Copyright DPIC Companies, Inc. 1995

**REGULATION 107 NOTICE**
**NEW YORK**

Effective  12/14/1999                                     Policy No.  PL703038/DPX703038

Issued to  Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

### NOTICE TO POLICYHOLDERS

This notice is provided pursuant to New York Insurance Department Regulation 107.

Your signature on this statement will indicate your understanding of and agreement to all the terms and conditions contained in this page. Regulation 107 requires that this signed statement must be attached to, and shall form part of your policy.

### NOTICE

The policy limit is inclusive of CLAIMS EXPENSES. Please refer to the notices on your Declarations page. Regulation 107 requires that we again notify you that the policy has CLAIMS EXPENSES inside the policy limit and that your limit may be eroded by the payment of such of CLAIMS EXPENSES.

Your deductible may also be used to pay CLAIMS EXPENSES as well as indemnity. Regulation 107 requires your signed acknowledgment that you understand this provision. You will have the option to select a defense attorney of your choice, to participate in the defense of any CLAIM, and to consent to a settlement. You may purchase an endorsement making the deductible not applicable to of CLAIMS EXPENSES.

Should you have any questions, your agent has a complete copy of Regulation 107 and can assist you.

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
I acknowledge that I understand that the policy limit includes CLAIMS EXPENSES; that CLAIMS EXPENSES may be part of my deductible; and that I may be uninsured if the Limit of Insurance is exhausted.

By _____     Date _____

Title _____

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent        MTP 02/16/2000

Endorsement 12

Form No. DP-37587-0 (03/96) NY                    © Copyright DPIC Companies, Inc. 1995

ATTORNEY SELECTION -NY

Effective  12/14/1999                                    Policy No.  PL703038/DEX703038

Issued to Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

It is agreed that I. Insuring Agreement, A.1. is deleted and replaced by the following:

I.A.1.  We may investigate any CLAIM and settle it in accordance with Condition B. Settlement.

You have the option to consent to our choice of defense counsel to represent you for any covered CLAIM described herein, which consent shall not be unreasonably withheld, and you have the right to participate in and assist in the direction of the defense. The defense attorney selected must be licensed and admitted to practice before the courts in the jurisdiction where the CLAIM is venued.

It is also agreed that II. Limits of Insurance, E.1. is deleted and the following substituted:

II.E.1.  The Deductible does not apply to CLAIM EXPENSES that arise out of CLAIMS described in III. DEFINITIONS OF TERMS IN BOLD PRINT, A. CLAIM, part 2. We have the right to select legal counsel to represent you for any covered CLAIM described in section III.E.2. until the CLAIM qualifies under III.E.1.

It is agreed that I. INSURING AGREEMENTS, C. What We Do Not Insure, is amended by adding the following exclusion:

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent          MTP 02/16/2000

Form No. DP-37576-0 (04/98) NY

Endorsement 11

© Copyright DPIC Companies, Inc. 1995

**PREMIUM PAYMENTS**

Effective  12/14/1999                          Policy No.  PL703038/DEX703038

Issued to  Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

This endorsement amends the Declarations, Item 5., as follows:

The Premium for this policy will be paid as follows:

ON  ___12/14/1999___    $    111,299    *(Includes 1 time Charge of 2500 for additin of Buckhurst Entity)*

ON  ___12/14/2000___    $    108,799

ON  ___12/14/2001___    $    105,106

*Inclds Embassy Suites SEX @ 6,693*

*Inclds embassy Suites SEX @ 3000*

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent       MTP 02/16/2000

Endorsement 10

Form No. DP-37409-0 (01/96)

© Copyright DPIC Companies, Inc. 1995

**POLICYHOLDER EARLY**
**RESOLUTION CREDIT (PERC)**

Effective   12/14/1999 _____ Policy No.   PL703038/DEX703038 _____

Issued to Perkins Eastman Architects, P.C. _____

by the Company shown above is changed as follows:

It is agreed that section II. Limits Of Insurance And Deductible, subpart E. 4. is deleted and replaced by the following:

E. The Deductible shown in the Declarations will apply as follows:

4.    A portion of the Deductible that you paid for a CLAIM will be reimbursed to you if that CLAIM is resolved in one of the following manners:

a)    For a CLAIM that is resolved within one (1) year following the date that the CLAIM becomes a CLAIM described in section III. Definitions Of Terms In Bold Print, A. CLAIM, part 1., you will be reimbursed up to seventy-five percent (75%), but not to exceed a maximum reimbursement of $15,000; or

b)    For a CLAIM that is resolved after one (1) year following the date that the CLAIM becomes a CLAIM described in section III. Definitions Of Terms In Bold Print, A. CLAIM, part 1., through the use of "formal mediation," you will be reimbursed up to fifty percent (50%), but not to exceed a maximum reimbursement of $15,000.

"Formal mediation" means the voluntary process by which a qualified professional mediator, chosen by parties to the CLAIM with agreement by us, meets with and intercedes between the parties in an attempt to resolve the CLAIM. Litigation and arbitration are specifically excluded from this definition.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers _____
Authorized Agent         MTP 02/16/2000                                    Endorsement  9

Form No. DP-37406-0 (05/98)                               © Copyright DPIC Companies, Inc. 1995

NAMED INSURED

Effective  12/14/1999 _____   Policy No.  PL703038/DEX703038 _____

Issued to  Perkins Eastman Architects, P.C. _____

by the Company shown above is changed as follows:

It is agreed the DECLARATIONS, Item 1., Named Insured, is amended to read as follows:

Perkins Eastman Architects, P.C.

Bradford Perkins & Associates, Architects, P.C.

Bradford Perkins & Associates

Perkins, Geddis, Eastman, Architects

Bradford Perkins & Associates, P.C.

L. Bradford Perkins Architects, P.C.

Perkins Eastman Partnership

Perkins Eastman & Partners/Ben Thompson Associates

PGE.Mills Associates, Architects

Perkins Eastman Mills Architects

Perkins Eastman & Partners

Davis Brody & Associates / Perkins Geddis Eastman

Perkins Eastman Architects PC / Bhavnani & King Architects

Buckhurst Fish & Jacquemart ✓

Additional Premium:  $2,500

*Replaced by end.#17

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:.

Singer Nelson Charlmers _____
Authorized Agent        MTP 02/16/2000

Endorsement  8

Form No. DP-37301-0 (01/96)        © Copyright DPIC Companies, Inc. 1995

**DOLLAR ONE DEFENSE COVERAGE (DEDUCTIBLE NOT APPLICABLE TO CLAIMS EXPENSES)**

Effective  12/14/1999                              Policy No.  PL703038/DEX703038

Issued to Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

It is agreed that II. LIMITS OF INSURANCE, E. Deductible, is amended as follows:

Paragraph 2 is deleted and the following substituted:

1.    You must pay the Deductible obligation for CLAIMS before the Company is obligated to pay. The Deductible amount stated in the Declarations shall not apply to any amounts payable as CLAIMS EXPENSES.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent          MTP 02/16/2000                    Endorsement  7

Form No. DP-37254-0 (01/96)                     © Copyright DPIC Companies, Inc. 1995

Security Insurance Company of Hartford

**DPRCG ENDORSEMENT**

Effective 12/14/1999 _____   Policy No. PL703038/DEX703038 _____

Issued to Perkins Eastman Architects, P.C. _____

by the Company shown above is changed as follows:

A.     This Policy is issued subject to certain provisions of the Liability Risk Retention Act of 1986 (the "Act") relating to purchasing groups. Participation in the Design Professionals Risk Control Group (DPRCG) is conditioned upon the continued validity of the Act.

B.     An Insured who is a member of DPRCG may qualify for an underwriting profit distribution pursuant to terms and conditions agreed to by the Company and DPRCG.

      Only the premium for the first $1,000,000 or less of professional liability coverage, including Deductible options and specific job excess coverage, is subject to this agreement.

C.     Coverage under this policy will also apply to the Insured's activities as 1) a committee member or a member of the DPRCG Board of Directors and 2) activities as a DPRCG Advisory Panelist. These activities shall be deemed by the Company to be part of the Insured's PROFESSIONAL SERVICES.

D.     The Deductible is specifically waived for your acts, errors or omissions as a DPRCG Committee Member or Board Member.

**ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Countersignature:

Singer Nelson Charlmers _____
Authorized Agent     MTP 02/16/2000              Endorsement 6

Form No. DP-37231-0 (01/96)            © Copyright DPIC Companies, Inc. 1995

**WAIVER OF SUBROGATION**

Effective  12/14/1999 _____        Policy No.  PL703038/DEX703038 _____

Issued to  Perkins Eastman Architects, P.C. _____

by the Company shown above is changed as follows:

It is agreed that section IV. Conditions Affecting This Insurance, part C. Transfer of Rights of Recovery Against Others to Us, is deleted and replaced by the following:

   C.     Transfer of Rights of Recovery Against Others to Us (Subrogation)

          You and the Company may have rights to recover all or part of any payment you or the Company make under this policy. If so, those rights are transferred to us. At our request, you will cooperate in transferring those rights to us and in helping us enforce them.

          Prior to a CLAIM, if you agreed in a written contract with your client to waive your rights of recovery or subrogation, we will not exercise rights of recovery or subrogation pursuant to that contract. Subsequent to a CLAIM, you must do nothing to impair those rights.

          Any monetary recoveries will be distributed to you and the Company on a pro rata basis determined by the amounts paid by you within the Deductible and paid by the Company under this policy.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers _____
Authorized Agent        MTP 02/16/2000                        Endorsement  5

Form No. DP-37212-0 (02/97)                       © 1997 DPIC Companies, Inc.

# Security Insurance Comp. of Hartford

LIBERALIZATION

Effective **12/14/1999**      Policy No. **PL703038/DEX703038**

Issued to **Perkins Eastman Architects, P.C.**

by the Company shown above is changed as follows:

It is agreed that section IV. Conditions Affecting This Insurance, is amended by adding the following:

> If the Company files with the appropriate regulator revisions to the terms and conditions of this policy form to provide more coverage without an additional premium charge, then your policy will automatically provide this additional coverage as of the date the filed revision is effective in the state shown in the mailing address of the first Named Insured.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers

Authorized Agent     MTP 02/16/2000        Endorsement  4

Form No. DP-37211-0 (02/97)        © 1997 DPIC Companies, Inc.

**Security Insurance Company of Hartford**

**INNOCENT INSUREDS**

Effective  12/14/1999                                     Policy No.  PL703038/DEX703038

Issued to  Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

It is agreed that section I. Insuring Agreements, part C. What We Do Not Insure (Exclusions), subpart 4. is deleted and replaced by the following:

> This insurance does not apply to the following:
>
> > **CLAIMS** that are related to dishonest, fraudulent, malicious, or criminal acts or omissions, committed by you or at your direction, or about which you should have known, whether or not you intended damage to result. However, we will defend a **CLAIM** against an Insured who did not have knowledge of the dishonest, fraudulent, malicious, or criminal acts or omissions. But we will not defend any criminal prosecution under any circumstances.

**ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Countersignature:

Singer Nelson Charlmers

Authorized Agent        MTP 02/16/2000                              Endorsement  3

Form No. DP-37210-0 (02/97)                          © 1997 DPIC Companies, Inc.

**SPECIFIC PROJECT EXCESS**

Effective  12/14/1999                                    Policy No.  PL703038/DEX703038

Issued to  Perkins Eastman Architects, P.C.

by the Company shown above is changed as follows:

In consideration of additional premium paid, Item 5. of the Declarations, LIMITS OF INSURANCE, is amended to add the following additional limit:

| Specific Project Excess | Each Claim | Aggregate |
|---|---|---|
|  | $ 3,000,000 | $ 3,000,000 |

The Specific Project Excess Limits shall apply:

1.  only to CLAIMS MADE AND REPORTED during the policy period arising out of the project identified below; and

2.  only in the event that the respective Limits Of Insurance stated in Item 5. of the Declarations with reference to Professional Liability have been exhausted by payments either for the specific named project or for any other covered claim.

SPECIFIC PROJECT:

Embassy Suites Hotel - Battery Park City

The premium charge for this endorsement is $  16,386  .(Fully earned)

1999 - 2000  $6,693
2000 - 2001  $6,693
2001 - 2002  $3,000

*Endt deleted eff 7/19/01 due to unt Incr to $15 mil. MB*

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent    MTP 02/16/2000                    Endorsement  2

Form No. DP-37202-0 (01/96)                    © Copyright DPIC Companies, Inc. 1995

# Security Insurance Compa␣ of Hartford

**Endorsement 37120**

## CONTRACTUAL LIABILITY

Effective  **12/14/1999**                                    Policy No.  **PL703038/DEX703038**

Issued to **Perkins Eastman Architects, P.C.**

by the Company shown above is changed as follows:

It is agreed that such coverage as is provided by the policy for contractual liability applies to:

Designated entities:       All entities with whom the Insured enters into any form of
written contract or agreement.

Designated contracts:      All written contracts entered into by the Insured

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Singer Nelson Charlmers
Authorized Agent       MTP 02/16/2000                    Endorsement  1

Form No. DP-37120-0 (01/96)                    © Copyright DPIC Companies, Inc. 1995

# PROFESSIONAL LIABILITY INSURANCE POLICY

The insurance provided by this policy is on a CLAIMS MADE basis. This policy applies only to CLAIMS that are first made against you during the policy period shown in the Declarations. This policy applies to CLAIMS related to your PROFESSIONAL SERVICES performed after the retroactive date, if any, shown in the Declarations or any Endorsement. The payment of CLAIM EXPENSES will reduce the Limits of Insurance available to pay CLAIMS.

Certain states mandate specific warnings, exceptions, or conditions. Please read this policy and all Endorsements carefully and discuss the coverage with your Insurance Agent or Broker.

Throughout this policy, the words "you," "your," and "Insured" refer to the Named Insured shown in the Declarations and any other individual or entity qualifying as an Insured under this policy. The words "we," "us," "our," and "Company" refer to the Company providing this insurance as shown in the Declarations. The words and phrases appearing in BOLD PRINT are defined in this policy.

## I.    INSURING AGREEMENTS

### A.    What We Insure

We will pay those sums in excess of the Deductible that you become legally obligated to pay for CLAIMS related to your PROFESSIONAL SERVICES to which this policy applies.

We have the right and the duty to defend CLAIMS, subject to the following:

1.    We have the right and duty to defend a covered CLAIM seeking damages; however, you have a) the option to select the defense attorney or to consent to our choice of defense attorney, which consent shall not be unreasonably withheld, and b) the right to participate in and assist in the direction of the defense.

2.    The most we will pay is described in section II. LIMITS OF INSURANCE AND DEDUCTIBLE.

3.    Our right and duty to defend and pay on your behalf ceases when the applicable Limit of Insurance is exhausted in payment of CLAIMS or CLAIM EXPENSES, separately or in combination.

PROFESSIONAL SERVICES means services provided by or on behalf of an Insured in

- the performance of studies, surveys, assessments, evaluations, consultations, inspections, observations, scheduling, sequencing, or training; or

- the preparation of reports, opinions, recommendations, permit applications, maps, drawings, designs, specifications, manuals, instructions, computer programs for designed systems, or change orders; or

*Page 1*

© 1996 DPIC Companies, Inc.

- the sampling, testing, monitoring, or quality control necessary to perform any of the services listed above; or

- the supplying of furnishings as a part of interior design services.

**PROFESSIONAL SERVICES** does not include construction activities.  Construction activities are not covered by this policy.

B.    What We Reimburse

We will reimburse you, upon written request, for your loss of earnings as a result of being required by us to attend a mediation, arbitration, deposition, or trial related to a covered CLAIM, subject to the following:

1.    We will not pay for the first three (3) days attendance required for each CLAIM.

2.    This earnings reimbursement will not be considered as payment of a CLAIM or CLAIM EXPENSES and is in addition to the Limits of Insurance.  The Deductible obligation does not apply to this reimbursement.

3.    Limits of Reimbursement:     $300 per day, per CLAIM
                                   $6,000 annual aggregate for all CLAIMS

4.    The per day limit is the most we will pay for each full day you are required to attend.  The annual aggregate limit is the most we will pay for loss of earnings for all CLAIMS MADE during each consecutive twelve (12) months of the policy period beginning on the effective date.

C.    What We Do Not Insure (Exclusions)

This insurance does not apply to the following CLAIMS:

1.    CLAIMS related to liability assumed by you under any "contract."  This exclusion does not apply if you would have been liable in the absence of that "contract" due to your error, omission, or negligent act.

      "Contract" means any agreement, whether express or implied, in fact or in law, written or oral, including, but not limited to, hold harmless and indemnity clauses, warranties, guarantees, certifications, or penalty clauses.

2.    CLAIMS by your employees, or by or on behalf of anyone, related to your employment obligations, decisions, practices, or policies.

3.    CLAIMS, by or on behalf of anyone, related to actual or alleged discrimination, humiliation, or harassment.

*Page 2*

                                    © 1996 DPIC Companies, Inc

4.   CLAIMS related to dishonest, fraudulent, malicious, or criminal acts or omissions, committed by you or at your direction, whether or not you intended damage to result.

5.   CLAIMS for punitive damages, exemplary damages, multiplied damages, fines, or penalties.

6.   CLAIMS against you by any other Insured under this policy.

7.   CLAIMS against you by (a) an entity in which you maintain a cumulative ownership interest greater than ten percent (10%) or (b) an entity that maintains any ownership interest in you.

8.   CLAIMS related to any product developed by you for multiple sale or mass distribution, including, but not limited to, computer programs and software.

9.   CLAIMS related to your specification of any asbestos material or product, in any form, (a) prior to 1990, for installation in the United States of America or (b) anytime, for installation anywhere else in the world.

10.  CLAIMS related to the actual, alleged, or threatened exposure to nuclear source material, nuclear by-product materials, nuclear waste activities, nuclear incident, or extraordinary nuclear occurrence, as defined in the Atomic Energy Act of 1954 or as amended.

11.  CLAIMS for which you are insured under any other professional liability policy. This exclusion applies even if those CLAIMS are not covered in whole or in part by that policy for any reason.

12.  CLAIMS related to the failure to maintain, obtain, recommend, or require any form of insurance, suretyship, or bond, either with respect to an Insured or others.

13.  CLAIMS related to your ownership, rental, or leasing of any real property or personal property. Personal property includes, but is not limited to, automobiles, aircraft, watercraft, and other kinds of conveyances.

D.   Who Is an Insured

You are an Insured if your name is shown in the Declarations or any Endorsement, or if you are one of the following:

1.   A partner, principal, director, officer, or employee of an Insured, but only for PROFESSIONAL SERVICES performed for an Insured.

2.   Temporary staff working on behalf of and under direct supervision of an Insured, but only for PROFESSIONAL SERVICES performed for an Insured.

*Page 3*

Form No. DP-37009-0 (03/96) NY

© 1996 DPIC Companies, Inc.

3.    A former partner, principal, director, officer, employee or temporary staff of an Insured, but only for PROFESSIONAL SERVICES performed for an Insured during that prior affiliation or employment. The insurance provided by this provision, as with all other provisions of this policy, is subject to section IV. CONDITIONS AFFECTING THIS INSURANCE, F. Other Insurance.

4.    A partner, principal, director, or officer of an Insured who was a sole proprietor, partner, principal, director, or officer of a previous professional practice, but only for CLAIMS related to that individual's PROFESSIONAL SERVICES in that professional practice, and not for the PROFESSIONAL SERVICES of others in that professional practice. The insurance provided by this provision applies only if there is no other insurance available and, as with all other provisions of this policy, is subject to any retroactive date contained in this policy.

5.    A co-venturer with another architectural, engineering, landscape architectural, land surveying, interior design, or environmental consulting firm, but only for your legal liability related to the PROFESSIONAL SERVICES performed by the joint venture.

6.    The legal representative of any deceased individual described above, but only to the extent of that individual's rights and duties under this policy.

### E.    When and Where We Insure

This insurance applies to CLAIMS that meet each of the following:

1.    The CLAIMS are first made against you during the policy period and reported to us within sixty (60) days after the end of the policy period shown in the Declarations.

2.    The CLAIMS are related to your PROFESSIONAL SERVICES performed after the retroactive date, if any, shown in the Declarations or any Endorsement, but prior to the end of the policy period, provided that you had no knowledge of the CLAIMS prior to the effective date shown in the Declarations.

3.    The CLAIMS are made

(a) in the United States of America, including its territories and possessions, Puerto Rico, and Canada, or

(b) made anywhere else in the world ("foreign").

We have the right, but not the duty, to investigate and defend "foreign" CLAIMS, as we deem proper, and settle as you and the Company agree in writing. If we elect not to investigate or defend "foreign" CLAIMS, you will investigate and defend as may be reasonably necessary, and settle as you and the Company agree in writing. We will promptly reimburse you for the reasonable costs of

*Page 4*

© 1996 DPIC Companies, Inc.

investigation and defense as they are incurred, and for the amount of any judgment or authorized settlement. This agreement is subject to all applicable terms of this policy.

We make no representations concerning whether this policy complies with laws or requirements of foreign countries concerning insurance matters.

## II.    LIMITS OF INSURANCE AND DEDUCTIBLE

A.    The Limits of Insurance, shown in the Declarations and described below, are the most we will pay regardless of the number of Insureds, CLAIMS, or individuals or entities making CLAIMS.

B.    The Limits of Insurance shown in the Declarations will apply as follows:

1.    Each CLAIM limit is the most we will pay for the CLAIM and CLAIM EXPENSES related to any single CLAIM.

2.    The aggregate limit is the most we will pay for the sum of all CLAIMS and CLAIM EXPENSES for all CLAIMS MADE during each consecutive twelve (12) months of the policy period beginning on the effective date. The election of any Extended Reporting Period will not result in a reinstatement of the aggregate limit

C.    One or more CLAIMS related to the same act, error, or omission, or the same series of acts, errors, or omissions, will be considered a single CLAIM and will be included within the earliest CLAIM related to that act, error, or omission, or series of acts, errors, or omissions.

D.    The Limits of Insurance shown in the Declarations apply in excess of the Deductible described below.

E.    The Deductible shown in the Declarations will apply as follows:

1.    The Deductible does not apply to CLAIMS defined in section III. DEFINITIONS OF TERMS IN BOLD PRINT, A. CLAIM, part 2.

2.    You must pay the Deductible obligation, upon written request, for CLAIMS and CLAIM EXPENSES before we are obligated to pay. We will determine the reasonableness of CLAIM EXPENSES that qualify in satisfaction of the Deductible.

3.    Unless otherwise endorsed, the Deductible applies whether this insurance is primary or excess and as follows:

a)    Each CLAIM Deductible is the most Deductible you must pay for the sum of any CLAIM and CLAIM EXPENSES related to any single CLAIM.

Form No. DP-37009-0 (03/96) NY                              © 1996 DPIC Companies, Inc.

b)     The aggregate Deductible is the most Deductible you must pay for the sum of all CLAIMS and CLAIM EXPENSES for all CLAIMS MADE during each consecutive twelve (12) months of the policy period beginning on the effective date.

4.     If any CLAIM is resolved through the use of "formal mediation," the Deductible you are obligated to pay will be reduced by fifty percent (50%) up to a maximum reduction of $12,500.

"Formal mediation" means the voluntary process by which a qualified professional mediator, chosen by parties to the CLAIM with agreement by us, meets with and intercedes between the parties in an attempt to resolve the CLAIM. Litigation and arbitration are specifically excluded from this definition.

F.     Any PROFESSIONAL SERVICES rendered or expenses incurred by you related to a CLAIM, or any return, withdrawal, or reduction of fees, will not be applied to the Deductible or Limits of Insurance without our prior written consent.


III.     DEFINITIONS OF TERMS IN BOLD PRINT

A.     CLAIM means

1.     a demand for money or services against you, or the filing of a suit or the institution of an arbitration proceeding naming you, seeking damages for an alleged error, omission, negligent act, or "personal injury" related to your PROFESSIONAL SERVICES; or

2.     an event of which you have knowledge that may result in a demand against you seeking damages related to your PROFESSIONAL SERVICES.

"Personal injury" means false arrest, detention, or imprisonment; wrongful entry, eviction, or other invasion of a right of privacy; libel, slander, utterance, electronic distribution, or publication in violation of a right of privacy; malicious prosecution; or the unintentional infringement of copyright or patent.

B.     CLAIM EXPENSES means

1.     fees charged by an attorney designated by us, a mediator, or an arbitrator; and

2.     all other fees, costs, and expenses related to the investigation, adjustment, or defense of a CLAIM, if authorized by us.

CLAIM EXPENSES do not include the salaries or expenses of the Company's employees or the fees and expenses of independent adjusters.

Form No. DP-37009-0 (03/96) NY

© 1996 DPIC Companies, Inc.

C.  CLAIMS MADE means CLAIMS that are

    1.  first made against you during the policy period shown in the Declarations, and

    2.  related to your PROFESSIONAL SERVICES performed after the retroactive date, if any, shown in the Declarations or any Endorsement but prior to the end of the policy period, provided that you had no knowledge of the CLAIMS prior to the effective date shown in the Declarations.

D.  CLAIMS MADE RELATIONSHIP means that period of time between the effective date of the first CLAIMS MADE policy between you and us and the cancellation or nonrenewal of the last consecutive CLAIMS MADE policy between you and us, where there has been no gap in coverage, but does not include any period covered by Extended Reporting Period coverage.

E.  PROFESSIONAL SERVICES is defined in section I. INSURING AGREEMENTS, A. What We Insure.

## IV.  CONDITIONS AFFECTING THIS INSURANCE

A.  When There Is a CLAIM

    1.  You must as soon as reasonably possible notify us or our agent of any CLAIM. Notice must be in writing and include

        a)  how, when, and where the CLAIM took place; and

        b)  the names and addresses of any witnesses or injured individuals.

    2.  You must also

        a)  immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the CLAIM;

        b)  authorize us to obtain records and other information;

        c)  cooperate with us in the investigation, defense, and settlement of the CLAIM; and

        d)  assist us, upon our request, in the enforcement of any right against any individual or entity that may be liable to you because of the CLAIM.

    3.  Expenses incurred by you for cooperation and assistance are not recoverable under this policy nor chargeable to the Deductible or Limits of Insurance without our written consent, except for earnings reimbursed under section I. INSURING AGREEMENTS, B. What We Reimburse.

© 1996 DPIC Companies, Inc.

4. You will not, except at your own cost, voluntarily make payment, assume any obligation, or incur any expenses without our written consent.

**B. Settlement**

We will not settle any CLAIM without your written consent, , which consent shall not be unreasonably withheld. If, however, you unreasonably withhold your consent to any settlement recommended by us and elect to contest that CLAIM or continue the litigation, then our liability for that CLAIM will not exceed the amount for which that CLAIM would have been settled plus CLAIM EXPENSES up to the date you withheld consent.

**C. Transfer of Rights of Recovery Against Others to Us**

You and the Company may have rights to recover all or part of any payment you or the Company make under this policy. If so, those rights are transferred to us. You must do nothing to impair them. At our request, you will bring suit to transfer those rights to us and help us enforce them.

Any monetary recoveries will be distributed to you and the Company on a pro rata basis determined by the amounts paid by you within the Deductible and paid by the Company under this policy.

**D. Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Insured.

**E. Legal Action Against Us**

No individual or entity has a right under this policy to join us as a party or otherwise bring us into a suit seeking damages from an Insured, or to sue us unless all of the terms of this policy have been met.

A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against you, but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable Limits of Insurance. An "agreed settlement" means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

**F. Other Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent, or on any other basis, and specific exclusions in this policy always apply. When this insurance is excess, we will not defend any CLAIM that any other insurer has a duty to defend. If no other insurer defends, we have the right but not a duty to do so. If we defend, we will be entitled to your rights against all other insurers.

*Page 8*

© 1996 DPIC Companies, Inc.

G.    Premiums

The first Named Insured shown in the Declarations is responsible for the payment of all premiums and Deductibles, and will be the payee for any return premium we pay.

H.    Examination and Audit

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

I.    Bankruptcy

Bankruptcy or insolvency of an Insured or of an Insured's estate will not relieve us of our obligation under this policy. However, this insurance will not apply to liability directly or indirectly due to bankruptcy, insolvency, receivership, or subsequent liquidation.

J.    Cancellation/Non-Renewal

1.    Cancellation

a.    The first Named Insured shown in the Declarations, on behalf of all Insureds, may cancel this policy by mailing or delivering to us, or to our authorized agent or broker, advance written notice of cancellation.

If we cancel this policy, we will mail or deliver to the first Named Insured, on behalf of all Insureds, and to the Insured's authorized agent or broker, written notice of cancellation at least:

1)    fifteen (15) days before the effective date of cancellation, if we cancel for nonpayment of premium; or

2)    sixty (60) days before the effective date of cancellation, if we cancel for any other reason.

b.    We cannot cancel this policy except for:

1)    nonpayment of premium;

2)    fraud or material misrepresentation in procuring this insurance or resulting from any CLAIM; or

3)    changes in laws affecting this insurance.

c.    We will mail or deliver our notice to the first Named Insured's last mailing address known to us and to our authorized agent or broker.

d.    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

*Page 9*

e.    If this policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

f.    If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

2.    **Non-Renewal/Conditional Renewal**

    a.    If the Company elects not to renew this policy, the Company shall send notice as provided below along with the reason for nonrenewal.

    b.    If the Company conditions renewal of this policy upon:

        1)    reduction of limits;

        2)    change in type of coverage;

        3)    reduction of coverage;

        4)    increased deductible;

        5)    addition of exclusion;

        6)    increased premiums in excess of ten percent (10%), exclusive of any premium increased due to and commensurate with insured value added; or as a result of experience rating, retrospective rating or audit;

    the Company shall send notice as provided in the paragraph below.

3.    **Notice of Non-Renewal and Conditional Renewal**

    a.    If the Company decides not to renew this policy or to conditionally renew this policy as provided in the paragraphs 2. a. and b. above, the Company shall mail or deliver written notice to the Named Insured at least sixty (60) but not more than one hundred twenty (120) days before:

        1)    the expiration date; or

        2)    the anniversary date if this is a continuous policy.

    b.    Notice will be mailed or delivered to the named insured at the address shown in the policy and to our authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

    c.    We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer mails or delivers notice that the policy has been replaced or no longer desired.

*Page 10*

           © 1996 DPIC Companies, Inc.

    d.    If we fail to provide notice at least sixty (60) days prior, the annual aggregate limit of the expiring policy shall be increased in proportion to the policy extension.

4.    **Loss Information**

Upon written request, we shall mail or deliver the following loss information to you or your authorized agent or broker within twenty (20) days:

    a.    Information on closed CLAIMS, including date and description of occurrence, and any incurred losses;

    b.    Information on open CLAIMS, including date and description of occurrence, and amounts of any payments; and

    c.    Information on notice of any occurrences, including date and description.

K.    **Transfer of Duties When Limit Is Exhausted**

If we conclude that, based on CLAIMS which have been reported to us and to which this insurance may apply, the per CLAIM or the aggregate limit is likely to be exhausted in the payment of judgments, settlements or CLAIMS EXPENSE, separately or in combination, we will notify you in writing.

When a Limit of Insurance has actually been exhausted in the payment of judgments, settlements or CLAIMS EXPENSES, separately or in combination:

1.    We will notify you, in writing, as soon as practicable, that:

    a    a limit has actually been exhausted; and

    b.    our duty to defend has also ended.

2.    We will initiate, and cooperate in, the transfer of control to any appropriate insured of all CLAIMS seeking damages which are subject to those limits and which are reported to us before those limits are exhausted. That Insured must cooperate in the transfer of control of said CLAIMS.

We agree to take such steps as we deem appropriate to avoid a default in, or continue defense of, such CLAIMS until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any CLAIM seeking damages that would have been subject to those limits, had they not been exhausted, if the CLAIM is reported to us after a limit has been exhausted.

3.    The first Named Insured and any other Insured involved in a CLAIM seeking damages subject to the aggregate limit must arrange for the defense of such

*Page 11*

© 1996 DPIC Companies, Inc.

CLAIMS within such time period as agreed to between the appropriate Insured and us. Absent any such agreement, arrangements for the defense of such CLAIMS must be made as soon as practicable.

The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with the preceding paragraphs. The duty to reimburse us will begin on:

a.    the date on which a Limit of Insurance is exhausted, if we sent notice in accordance with paragraph I.a. above; or

b.    the date on which we sent notice in accordance with paragraph I.b. above, if we did not send notice in accordance with paragraph I.a. above.

The exhaustion of a Limit of Insurance by the payment of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this condition.

**L.    Accounting For Legal Defense**

If we pay CLAIMS EXPENSES as a result of a covered CLAIM, you are entitled, upon written request, to an accounting of legal defense costs actually expended.

**M.    Changes**

This policy contains all agreements between you and the Company concerning the insurance provided. The first Named Insured shown in the Declarations is the only Insured authorized to request changes in the terms of this policy. Policy terms can be amended or waived only by Endorsement issued by us and made a part of this policy.

The Company has caused this policy to be signed by its authorized officers, but it is not valid unless countersigned on the Declarations page by a duly authorized representative of the company.

President                                              Stanley G. Fullwood

                                                        Secretary

*Page 12*

Form No. DP-37009-0 (03/96) NY                    © 1996 DPIC Companies, Inc.

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x

DORMITORY AUTHORITY OF THE STATE OF NEW
YORK, NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and THE CITY OF NEW YORK,

**VERIFIED COMPLAINT**

Index No. 403436/06

Plaintiffs,

-against-

SAMSON CONSTRUCTION COMPANY (a/k/a
SANSOM CONSTRUCTION CO., INC. d/b/a SAMSON
CONSTRUCTION COMPANY, SAMSON
CONSTRUCTION CO., INC. and SAMSON
CONSTRUCTION  INC.), and PERKINS EASTMAN
ARCHITECTS, P.C. ,

Defendants. .

*FILED*

*FEB - 2 2007*

*NEW YORK
COUNTY CLERK'S OFFICE*

-------------------------------------------------------------------- x

Plaintiffs, by their attorney, Michael A. Cardozo, Corporation Counsel of the City

of New York, as and for their complaint against defendants, respectfully allege as follows:

### *Preliminary Statement*

1.      This action arises out of work improperly performed by defendants

pursuant to contracts for the construction of a forensic biology laboratory for use by New York

City's Office of the Chief Medical Examiner ("OCME").  Construction of the laboratory was

financed and managed by the Dormitory Authority of the State of New York ("DASNY"),

pursuant to a contract with the City of New York (the "City").  Defendants are contractors and

consultants who were engaged to perform construction work and provide construction-related

services in connection with the construction of the laboratory.

2.      Defendants' repeated failures to perform in accordance with their

contractual obligations, and in accordance with generally accepted professional standards,

delayed the completion of construction by more than eighteen months, resulted in damage to

adjacent structures and facilities, and significantly increased plaintiffs' construction costs.

Accordingly, plaintiffs seek a money judgment against defendants, for a sum to be determined,

but in excess of $40,000,000, as compensation for damages suffered by plaintiffs as a result of

defendants' actions and omissions.

### *The Parties*

3.     Plaintiff DASNY is a public benefit corporation organized and

existing under the laws of the State of New York, having its principal place of business at 515

Broadway, Albany, New York 12207.

4.     Plaintiff City of New York is a municipal corporation organized and

existing under the laws of the State of New York, having its principal place of business at City

Hall, New York, New York 10007.

5.     Plaintiff New York City Health and Hospitals Corporation ("HHC")

is a public benefit corporation organized and existing under the laws of the State of New York,

having its principal place of business at 125 Worth Street, New York, New York 10013.

6.     Upon information and belief, defendant Samson Construction

Company ("Samson") (a/k/a "Sansom Construction Co., Inc." d/b/a "Samson Construction

Company, "Samson Construction Company, Inc." and "Samson Construction Inc.") is, and was

at all relevant times, a corporation organized and existing under the laws of the State of New

York, with its principal place of business at 3333 New Hyde Park Road, New Hyde Park, New

York 11042.

7.     Upon information and belief, defendant Perkins Eastman Architects,

P.C. ("Perkins Eastman") is, and was at all relevant times, a professional corporation organized

- 2 -

and existing under the laws of the State of New York, with offices located at 115 Fifth Avenue, New York, New York 10003-1004.

## FACTUAL ALLEGATIONS

8.    In 2000, the City determined to have constructed a state-of-the-art forensic biology laboratory (the "DNA Lab"), for use by the OCME, for the benefit of the citizens of New York City. The site selected for the construction of the DNA Lab was city-owned land adjacent to Bellevue Hospital, in the vicinity of First Avenue and East 26th Street, Borough of Manhattan, New York City (the "Site"). Bellevue Hospital is operated by HHC. The portion of Bellevue Hospital known as "D Building" is located directly north of the Site.

9.    The planning, design and construction of the DNA Lab (the "Project") was financed initially and managed by DASNY, pursuant to the Project Management Agreement between DASNY and the City, dated August 2, 2001, and in accordance with the provisions of the Dormitory Authority Act, as amended, Public Authorities Law § 1675 et seq.

10.    The plan for the DNA Lab contemplated the construction of a 15-story structure with a two-level basement, occupying a 3500-square foot footprint, and consisting of a total of approximately 320,000 square feet of space. A budget of $242.8 million was established for the Project. Under the construction schedule, work on the Project was to be commenced by October 2001 and completed by April 2005.

### *The Project Contracts*

11.    Under the Project Management Agreement, in furtherance of the Project, DASNY was authorized to enter into contracts with consultants, construction contractors and a construction manager.

12.    By contract dated October 2000 (the "Perkins Contract"), DASNY retained defendant Perkins Eastman as the architect for the Project. Under the Perkins Contract,

- 3 -

Perkins Eastman agreed to prepare construction documents and cost estimates, and to provide construction administration. In addition, among its other responsibilities, Perkins Eastman was obligated to develop a plan for soil testing and subsurface investigations; to provide a site plan, locating the DNA Lab in relation to Bellevue Hospital and other structures; to make appropriate design recommendations; and to prepare contract drawings and specifications. During the construction phase of the Project, Perkins Eastman was obligated to provide, among other services, periodic visual inspections of the construction site for the purpose of ensuring that the work being performed was in compliance with the contract documents. Perkins was authorized, under the Perkins Contract, to engage subcontractors.

13.    Upon information and belief, Perkins engaged subcontractors and subconsultants in connection with the Work, including Mueser Rutledge Consulting Engineering, which was retained as a consultant to carry out certain supervisory and design functions pertaining to the excavation support system. Perkins was fully responsible for the work of its subcontractors and was obligated to ensure that all work performed by its subcontractors was in compliance with the Perkins Contract.

14.    By contract dated January 11, 2002 (the "Samson Contract"), DASNY engaged Samson to perform excavation and foundation work for the Project. Under the Samson Contract, Samson was required to excavate the building footprint to a depth of approximately 35 feet. Prior to excavation, Samson was required to design and install an excavation support system to provide lateral support for the structures and facilities adjacent to the perimeter of the excavation site and to provide a barrier to the entry of groundwater into the excavated pit and permit proper dewatering. Pursuant to the Samson Contract, Samson agreed to complete, in a good workmanlike manner, all work required by the Samson Contract (the

"Work"). Samson was obligated to protect all adjoining property and to repair or replace any property damaged or destroyed during the progress of the Work. The Work was to be completed by March 31, 2003.

15.    Upon information and belief, Samson engaged subcontractors and subconsultants in connection with the Work, including Vachris Engineering, P.C., to design the excavation support system, and AKRF Engineering, to design a system capable of dewatering the Site during excavation. Samson was fully responsible for the work of its subcontractors and subconsultants and was obligated to ensure that all work performed by its subcontractors was in compliance with the Samson Contract.

### Samson's Failures

16.    In 2002, Samson began installation of the excavation support system, which consisted of a series of interlocking steel sheets driven into the ground to a depth of approximately 35 feet (the "Steel Sheeting System"), preliminary to excavation. Vibration from the installation of the Steel Sheeting System caused a significant settlement of the south wall of D Building. The settlement caused interior and exterior damage to D Building, and to other adjacent structures and facilities.

17.    Construction was delayed while repairs were made and measures were taken to guard against further settlement once Samson resumed work on the installation of the Steel Sheeting System.

18.    Samson failed to properly install the Steel Sheeting System, and the system, as installed, was insufficient to provide foundation support and allow for proper dewatering. Further settlement of D Building resulted from Samson's failure to control dewatering, causing interior and exterior damage to D Building.

- 5 -

19.     Samson failed to properly install the Steel Sheeting System, leaving below-grade openings which allowed water to enter the excavation site, inhibiting the dewatering process and interfering with excavation.  As a result of the improper installation of the Steel Sheeting System, it became necessary to employ an additional method of waterproofing known as jet grouting, an expensive and time-consuming procedure that involved pumping a cement-like chemical into a series of deep holes that had been bored along the edge of the excavation pit. This procedure delayed the project by more than six months.

20.     Samson failed to design and implement an effective dewatering system.  Further settlement of D Building, which caused additional damage, resulted from Samson's failure to properly dewater the Site during excavation.

21.     On or about August 26, 2003, Samson damaged the Steel Sheeting System by removing a section of steel plating which had been placed to close an opening in the Steel Sheeting System.   When the plating was removed, water and soil rushed into the excavation site.  As a result, the foundation of D Building was affected and a portion of D Building abruptly settled several additional inches.  The settlement further damaged D Building, and nearby sewer and water mains.

22.     Temporary emergency repairs were performed, and permanent repairs were subsequently performed at great expense to plaintiffs.

23.     On or about September 26, 2003, the City's Department of Buildings issued a Notice of Violation, directing that work be stopped due to Samson's failure to safeguard public and private property.

24.    As a result of the August 2003 inundation of water into the excavation site, and the aforementioned acts and omissions, completion of the Project was delayed by more than 18 months, resulting in significant additional costs to plaintiffs.

### *Failures by Perkins Eastman*

25.    In violation of generally accepted professional standards, Perkins Eastman failed to perform a complete an accurate analysis of the existing foundation of D Building and related subsurface conditions, sufficient to determine whether vibration from the installation of the Steel Sheeting System was likely to cause damage to structures and facilities near the Site and increase costs to plaintiffs, and also failed to make appropriate design recommendations regarding the excavation support system.  Perkins Eastman failed to warn DASNY sufficiently of the risks to the D Building posed by the installation of the Steel Sheeting System and failed to take precautions against such risks. During the installation of the Steel Sheeting System, Perkins Eastman failed to provide the construction monitoring necessary to ensure that the work being performed by Samson was in substantial compliance with the design recommendations and specifications.

### AS AND FOR A FIRST CAUSE OF ACTION, AGAINST DEFENDANT SAMSON CONSTRUCTION COMPANY

26.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 25 above, as though fully set forth at length herein.

27.    Samson breached the Samson Contract by failing to complete the work it was required to perform under the contract, in a timely manner and in accordance with the terms of the contract.

- 7 -

28.    As a result of Samson's breaches of the Samson Contract, plaintiffs incurred significant additional expenses in connection with the completion of the excavation and foundation work.

29.    Accordingly, plaintiffs are entitled to recover all such additional costs.

## AS AND FOR A SECOND CAUSE OF ACTION, AGAINST DEFENDANT SAMSON CONSTRUCTION COMPANY

30.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 29 above, as though fully set forth at length herein.

31.    Defendant Samson was negligent in performing work under its contract, causing the excavation site to become flooded with water and resulting in the settlement of the adjoining D Building and damage to other nearby structures and facilities.

32.    By reason of the foregoing, plaintiffs incurred significant additional expenses in order to remedy the damage caused to the D Building and other nearby structures and facilities.

33.    Accordingly, plaintiffs are entitled to recover all such additional costs.

## AS AND FOR A THIRD CAUSE OF ACTION, AGAINST DEFENDANT SAMSON CONSTRUCTION COMPANY

34.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 33 above, as though fully set forth at length herein.

35.    Article 9, Section 9.01 of the General Conditions of the Samson Contract states, in relevant part, as follows:

Section 9.01 – Time of Completion

- 8 -

D.  If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay to the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default. Default shall include abandonment of the Work by the Contractor.

36.  The Samson Contract specified that the amount of liquidated damages would be $1,500.00 per day.

37.  The Samson Contract required Samson to complete its work no later than March 31, 2003.

38.  Samson did not complete its work until July 30, 2004.

39.  Plaintiffs lost the beneficial use of the facilities due to Samson's failure to timely complete its work and, accordingly, plaintiffs are entitled to recover liquidated damages in the amount of $730,500.

## AS AND FOR A FOURTH CAUSE OF ACTION, AGAINST DEFENDANT SAMSON CONSTRUCTION COMPANY

40.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 to 39 above, as though fully set forth at length herein.

41.  Article 9, Section 9.01 of the General Conditions of the Samson Contract states in relevant part as follows:

Section 9.01 – Time of Completion

H.  The foregoing liquidated damages are intended to compensate the Owner only for the loss of beneficial use of the structure. In addition, the Contractor shall be liable to the Owner, to the fullest extent permitted by law, for whatever actual damages (other

- 9 -

> than actual loss of beneficial use) the Owner
> may incur as a result of any actions or
> inactions of the Contractor or its
> Subcontractors including, without limitation,
> interest expense and carrying costs,
> liabilities to other Contractors working on
> the project or other third parties, job
> extension costs, and other losses incurred by
> the Owner...

42.    As a consequence of Samson's breaches of its obligations under the

Samson Contract, including Samson's failure to timely perform its work, plaintiffs suffered

actual monetary damages, including but not limited to increased costs for materials and

equipment and labor escalation paid or to be paid to other contractors working on the Project.

43.    Accordingly, plaintiffs are entitled to recover from Samson all such

additional costs.

## AS AND FOR A FIFTH CAUSE OF ACTION, AGAINST DEFENDANT PERKINS EASTMAN ARCHITECTS, P.C.

44.    Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 to 43 above, as though fully set forth at length herein.

45.    Defendant Perkins breached the Perkins Contract by failing to

provide adequate designs for the Project, by failing to properly supervise the subcontractors and

subconsultants that it retained with regard to the Project, by failing to monitor the progress of the

Work to ensure that it was being completed properly and in substantial compliance with the

design recommendations, specifications and their intent, by failing to ascertain the actual field

conditions, including the subsurface conditions at the Site and the foundations beneath D

Building and by failing to advise DASNY of the risks to the D Building posed by the installation

of the Steel Sheeting System and taking precautions against such risks.

46.    As a result of Perkins' breaches of the Perkins Contract, plaintiffs incurred significant additional expenses to complete the Project.

47.    Accordingly, plaintiffs are entitled to recover all such additional costs.

## AS AND FOR A SIXTH CAUSE OF ACTION, AGAINST DEFENDANT PERKINS EASTMAN ARCHITECTS, P.C.

48.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 to 47 above, as though fully set forth at length herein.

49.    Defendant Perkins failed to comply with professional standards of care in that Perkins, inter alia, negligently failed to provide adequate designs for the Project, failed to properly supervise the subcontractors and subconsultants that it retained with regard to the Project, failed to monitor the progress of the Work to ensure that it was being completed properly and in compliance with the design recommendations, specifications and their intent, failed to ascertain the actual field conditions, including the subsurface conditions at the Site and beneath D Building, failed to advise DASNY of the risks to the D Building imposed by the installation of the Steel Sheeting System and failed to take precautions against such risks.

50.    As a result of Perkins' negligence, plaintiffs incurred significant additional expenses to complete the Project that plaintiffs would not have incurred absent such negligence.

51.    Accordingly, plaintiffs are entitled to recover all such additional costs.

WHEREFORE, plaintiffs respectfully request that judgment be entered in favor of plaintiffs and against the defendants, as follows:

- 11 -

(a)    on the first cause of action, against defendant Samson Construction Company in an amount to be determined at trial, but reasonably believed to be in excess of $ 37,000,000;

(b)    on the second cause of action, against defendant Samson Construction Company in an amount to be determined at trial, but reasonably believed to be in excess of $ 21,000,000;

(c)    on the third cause of action, against defendant Samson Construction Company in an amount to be determined at trial, but reasonably believed to be in excess of $ 730,500;

(d)    on the fourth cause of action, against defendant Samson Construction Company an amount to be determined at trial, but reasonably believed to be in excess of $ 21,000,000;

(e)    on the fifth cause of action, against defendant Perkins Eastman Architects, P.C., in an amount to be determined at trial, but reasonably believed to be in excess of $ 12,000,000;

(f)    on the sixth cause of action, against defendant Perkins Eastman Architects, P.C., in an amount to be determined at trial, but reasonably believed to be in excess of $ 16,000,000; and

interest thereon, plus the costs and disbursements of this action, and such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          February 1, 2007

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street, Room 3-231
New York, NY 10007
212-788-1146

Terry A. Sellers
Assistant Corporation Counsel

- 12 -

NO RSI
FiLED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DORMITORY AUTHORITY - STATE OF NEW YORK,
NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, and THE CITY OF NEW YORK,

                                        Plaintiffs,

                -against-

SAMSON CONSTRUCTION COMPANY,

                                        Defendant.

Index No. 403436/06

**NOTICE OF**
**APPEARANCE**
**AND DEMAND**
**FOR COMPLAINT**

**PLEASE TAKE NOTICE** that defendant, Samson Construction Company,

hereby appears in this action by its undersigned attorneys and demands that a copy of the

complaint and all other papers in this action be served on the undersigned at the office and post

office address stated below.

Dated: New York, New York
       January 8, 2007

RECEIVED

JAN - 8 2007

TRIAL SUPPORT OFFICE

DAVIDOFF MALITO & HUTCHER LLP

By: _____
         Evan M. Eisland
605 Third Avenue, 34th Floor
New York, New York 10158
(212) 557-7200

Attorneys for Defendant

FILED

JAN - 9 2007

NEW YORK
COUNTY CLERK'S OFFICE

TO:   MICHAEL A. CARDOZO, ESQ.
      Corporation Counsel of the City of New York
      100 Church Street, Room 3-231
      New York, New York 10007

00352309

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DORMITORY AUTHORITY - STATE OF NEW YORK,
NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, and THE CITY OF NEW YORK,

                       Plaintiffs,

        -against-

SAMSON CONSTRUCTION COMPANY,

                       Defendant.

Index No. 403436/06

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK     )
                         ) ss.:
COUNTY OF NEW YORK  )

THERESA FITTON, being duly sworn, deposes and says:

I am an employee of the law firm of Davidoff Malito & Hutcher LLP, attorneys for defendant. I am over 18 years of age, am not a party to this action and reside in Brooklyn, New York.

On January 8, 2007, I caused to be served the within **Notice of Appearance and Demand for Complaint** by depositing same, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service, to:

        Michael A. Cardozo, Esq.
        Corporation Counsel of the City
        100 Church Street, Room 3-231
        New York, New York  10007

                               _Theresa Fitton_
                                   Theresa Fitton

Sworn to before me this
8th day of January 2006

_____
      Notary Public

                OI SI LO
      Notary Public, State of New York
            No. 01LO5034923
        Qualified in Kings County
    Commission Expires October 24, 20 _10_

00352400